MILLEDGE, STANLEY, Associate Judge
(dissenting).
The Florida Real Estate Commission suspended for six months the real estate broker’s license of appellee on findings of fact that while acting as broker for an owner of land, he purchased the land for himself, using the fictitious name of his *618 wife for that purpose without revealing to the owner the identity of the purchaser. The Commission concluded that this was a breach of trust, etc., under § 475.25(1) (a), Fla.Stat., F.S.A. As Chapter 475 provides, the testimony was taken before an examiner, who' has no power to make findings. The commission’s determination was made on the basis of the reported testimony.
On review, the circuit judge[1] found that “the record fails to show any privity of contract between Benson [the broker] and Ben [the owner] * * * and therefore no fiduciary relationship existed between [the broker] and the said Ben and that the said [broker] was under no duty to make to Ben a disclosure of his principals,” and quashed the Commission’s order. The circuit judge’s order is here for review.
This court affirms without opinion on the authority of Graham v. Florida Real Estate Commission, Fla.App.1960, 119 So.2d 88, and Condermann v. Potter, Fla.App.1960, 126 So.2d 743. The latter case was decided on the authority of the first. I do not think that these cases should be followed and I think that both are in conflict with the decision and opinion of the Supreme Court of Florida in DeGroot v. Sheffield, Fla. 1957, 95 So.2d 912.
The question here concerns the scope of judicial review of an administrative order. The DeGroot case does not deal with the Florida Real Estate Commission, nor did the court have the question, as here, of the administrative agency making findings of fact based on an examiner’s report of testimony without himself making (or being permitted to make) findings of fact. The expressed purpose of the DeGroot opinion was to clarify the scope of judicial review of administrative orders and there is nothing in the opinion to lead me to the conclusion that the distinction made in the Graham and Condermann cases as applied to administrative proceedings has any proper application.
The proceedings here are under Chapter 475, Fla.Stat., F.S.A. The legislature has delegated to the Florida Real Estate Commission the power and the duty, among other things, to suspend the license of a registered real estate broker for conduct condemned by the statute. The legislature did not delegate the determination of the facts which warrant this result to the Commission and then also permit a subdelegation to an examiner. Nor did the legislature empower an examiner to make initial findings of fact. It is to the Commission alone that this power was delegated. The legislature empowered the Commission to designate an examiner but his power is limited simply to the conduct of an adversary hearing and to report the evidence to the Commission. The two cases now cited by this court held that since the examiner had not seen or heard the witnesses, the court could make its own unfettered examination of the evidence on judicial review of a Commission’s finding and order. This was done on the strength of Harmon v. Harmon, Fla.1949, 40 So.2d 209, a case concerning the force of a master’s findings of fact in a chancery case. In view of Chapter 475, supra, this should be especially noted. The Harmon case holds that findings of fact by a master in chancery may be set aside only if “clearly erroneous.” But we see that the legislature has not placed the examiner in the same relationship to the Commission that' a master in chancery bears to the chancellor. The Act provides that “The findings of fact of the commission shall have the same force and effect as the findings of a general master in chancery.” § 475.31(5).
In the Graham case, in the Condermann case, and in this case, it has not been noted that the Commission’s findings are the initial findings. In both instances, initial findings stand unless clearly erroneous. By *619 failing to observe the difference between a judicial finding of fact and an administrative finding of fact, in each of the three cases, the result is that the Commission’s findings of which have the force of a master’s findings of fact do not have the force of a master’s findings of fact.
The legislature did not empower the examiner to make any findings. It was the Commission which was empowered and it is their findings which are given the force of a master’s findings. In view of the constitutional guarantee of jury trials, the legislature could not empower a judge to attach little or no significance to jury findings of fact, but there is no such constitutional limitation which prevents the legislature from empowering an administrative agency to make findings of fact based on a transcript of testimony taken before an examiner. There is no hint of a view to the contrary in this case or in Graham or in Condermann.
There is nothing odd about Chapter 475. It is impossible to conceive of the courts themselves performing all the functions of administrative agencies, and these functions are defeated if the courts undertake to conduct de novo hearings of administrative proceedings and the courts would be swamped if they undertook this function generally. But that is the least part of the matter. The legislature has its own policy with reference to the regulation of an occupation highly charged with a public interest. If it wishes to delegate the execution of this policy to a Commission having special exportness in a particular field, it does not lie with the courts to thwart the legislative plan by substituting a plan of its own.
Even when the examiner makes findings of fact, it is agency findings, not the examiner’s, which are significant. Professor Davis’ work on administrative law was cited with approval in the DeGroot case. In that work, 2 Davis, Adm.Law, § 10.03, the following summary of the examiner’s function appears:
“The only important power of decision relates to contested cases; the agency always decides such cases. ■ The assignment of the examiner is not that of a judicial officer who makes a decision, which is merely subject to review by an appellate tribunal. The key provision of the APA concerning the deciding function of the examiner is that § 8(a) ‘the- agency shall have all the powers which it would have in making the initial decision.’ ”
Bearing on the examiner’s functions and powers is Federal Communications Commission v. Allentown Broadcasting Corp., 349 U.S. 358, 75 S.Ct. 855, 859, 99 L.Ed. 1147. The examiner recommended two competing applicants. The F.C.C. reversed its examiner. The court of appeals reversed the F.C.C. The Supreme Court reversed the court of appeals, so the F.C.C. order stood.
“The Court of Appeals’ conclusion of error as to evasiveness relies largely on its understanding that the Examiner’s findings based on demeanor of a witness are not to be overruled by a Board without a ‘ “very substantial preponderance in the testimony as recorded” ’, citing N. L. R. B. v. Universal Camera Corp. (C.A.2d) 190 F.2d 429, 430. We think this attitude goes too far. It seems to adopt for examiners of administrative agencies the ‘clearly erroneous’ rule of the Fed.Rules Civ. Proc., 52(a), 28 U.S.C.A., applicable to courts. In Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 492, 71 S.Ct. 456, 467, we said, 95 L.Ed. 456, 470, as to the Labor Management Relations Act hearings:
“ ‘Section 10(c) of the Labor Management Relations Act provides that “If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its find *620 ings of fact * * 61 Stat. 147, 29 U.S.C. (Supp.III) § 160(c), 29 U.S. C.A. § 160(c). The responsibility for decision thus placed on the Board is wholly inconsistent with the notion that it has power to reverse an examiner’s findings only when they are “clearly erroneous.” Such a limitation would make so drastic a departure from prior administrative practice that explicitness would he required.’
******
“The Federal Communications Act gives the Commission the power of ruling on facts and policies in the first instance.”
So, granting power to an examiner to make findings of fact does not imply a congressional intent to depart from normal administrative practice so as to hinder the agency in acting in the first instance and anything so drastic would require the most explicit words from Congress. How very much more obvious is the situation here. The legislature has given the examiner no power; there is no hint of ambiguity in the complete delegation of administrative power to the Commission; the force of the Commission’s findings of fact is clearly stated in terms which courts best understand.
The court in placing its affirmance solely on the Graham and Condermann cases necessarily implies that, but for those cases, the Commission’s findings are amply supported by the evidence. I suppose no one would assert that the Commission’s findings are “clearly erroneous.” The circuit judge trying the case de novo on the record found that there was no “privity of contract” between the broker and the owner and therefore no fiduciary relationship between them. I take this to be the judge’s finding that Benson was not Ben’s broker because Booth was the listing broker and Benson co-operated with Booth. Since Benson got a broker’s commission from Ben and wrote a letter to Ben’s mortgagee that “I am negotiating to sell the 60 acres * * * Mr. Sam Ben is in no position to meet his payment of $2,130, plus accumulated interest, due April 10th on your mortgage. I am trying to get Mr. Ben out of financial difficulties. I have a purchaser for this tract provided you be kind enough to extend the payment for some further date,” a Commission finding of a fiduciary relationship could hardly be characterized as “clearly erroneous”. No one, including the circuit judge, seems to challenge the Commission’s finding that a broker who secretly buys his principal’s land for himself, using the fictitious name of his wife as a dummy purchaser is guilty of fraud, concealment, false pretenses, dishonest dealings and breach of trust, all as condemned by § 475.25(1) (a).
These are the vices the legislature has undertaken to eliminate or at least to curb among the real estate brokers for the protection of the honorable brokers and of the public upon whom the dishonorable prey. The legislative agency has here found an example of dishonorable conduct to exist; it has suspended the broker’s license for a time. It has done this on ample evidence. The suspension is undone because a judge has a different opinion of the evidence from that of the Commission. The Act is quite clear that the Commission’s findings of fact can be set aside only when they are “clearly erroneous”; that is, have the force of the findings of a master in chancery. Yet here, as in Graham and Condermann, the court ignores the statute without even an explanation for doing so. More is involved in this case than Mr. Benson’s license. It is the third successive assumption of judicial power to defeat a clear legislative plan for dealing with the important public question of dishonest practice by real estate agents. The legislative language is clear and the legislation is not claimed to be unconstitutional. All that is ever said is that because judicial power is allocated in a certain way, administrative power must be allocated in the same way. If this matter stands as it is, it means that the legislature may not delegate the administrative function to an agency; it must delegate it to an examiner. Or, put another way, it means *621 that administrative agencies may not employ examiners. Another way of saying this is that the agencies cannot function adequately-
I would overrule the Condermann case and decline to follow the Graham case. With this conflict, the matter could he passed on by the Supreme Court, if conflict already does not exist.

. These proceedings are under § 476.35, Fla.Stat., F.S.A., before the 1959 amendment which provides for review of the Commission’s orders by the district courts of appeal rather than by the circuit court.